UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON CRUSE,

        Plaintiff,

Case No. 1:12-cv-479

Hon. Robert J. Jonker

v.

JASON R. WAYNE,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56(a) (docket no. 22).

**I.    Background**

Plaintiff is a prisoner incarcerated by the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF). *See* Amend. Compl. (docket no. 7). Plaintiff's amended complaint is directed against Assistant Resident Unit Supervisor (ARUS) Jason R. Wayne. *Id.* Plaintiff set forth the following allegations in his amended complaint. On or about December 17, 2009, plaintiff was released from segregation confinement at ICF and assigned to a general population cell in Housing Unit 3 ("Unit 3"). *Id.* at ¶ 10. On or about December 17, 2009, plaintiff reported to defendant, the acting ARUS at the unit, that he had been involved in a past incident with prison gang members and, as a result of this incident, his life was being threatened by other prisoners at ICF. *Id.* at ¶¶ 10-11. Plaintiff alleged that he "provided as many names as possible" to defendant and requested protective custody until he could be transferred to a different facility. *Id.* at ¶ 12. On

that same date, several unidentified Unit 3 prisoners were yelling verbal threats at plaintiff through their cell doors and in the presence of defendant. *Id.* at ¶ 13.

In response to plaintiff's request for protective custody and the "obvious threats" against him, defendant moved plaintiff from Unit 3 to a general population cell in Housing Unit 4 ("Unit 4"). *Id.* at ¶ 14. Upon his arrival in Unit 4 plaintiff alerted the unit's staff of the threats against his physical safety being made by several other prisoners at ICF and that defendant neither provided him with the requested placement in protective custody or a transfer from ICF to avoid these known threats. *Id.* at ¶ 15. While in Unit 4, plaintiff was required to traverse the general prison population commons area to attend his mandatory medication pickup call outs. *Id.* at ¶ 16. On or about December 19, 2009, when plaintiff was returning to Unit 4 from his mandatory medication pickup call out, he was confronted by several other prisoners, one of whom told plaintiff, "Yeah bitch ass nigga we told you we was going to get you . . ." *Id.* at ¶ 17. At that point, a number of these prisoners produced weapons and one of them hit plaintiff in the forehead "with what felt like a rock." *Id.* No ICF corrections staff were in the area at the time. *Id.* at ¶ 18. Plaintiff fled the scene and returned to Unit 4. *Id.* at ¶ 19. Upon returning to the unit, plaintiff reported the assault to the unit's staff and requested to see the sergeant on duty. *Id.* at ¶ 20. At that time, plaintiff was bleeding from his forehead, dizzy, and unable to stand without assistance. *Id.* Upon speaking with shift command following the assault, plaintiff was secured in temporary segregation pending his subsequent re-classification to protective custody. *Id.* at ¶ 21.

Based upon these allegations, plaintiff claims that defendant violated his Eighth Amendment right to be free from cruel and unusual punishment, by failing to provide sufficient protective custody to plaintiff in the face of a specific and known threat. *Id.* at ¶¶ 24-28. Plaintiff

claims that as a direct result of defendant's inaction and/or failure to protect plaintiff in the face of a specific and known threat to his physical safety, plaintiff suffered physical, emotional and mental damages. *Id.* at ¶ 29.[1] Plaintiff seeks compensatory damages in excess of $75,000.00. *Id.* at p. 5.

## II. Summary Judgment

### A. Legal Standard

Defendant seeks summary judgment under Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support

---

[1] The Court notes that while plaintiff alleged that he "requested, but never received, medical attention for the physical injury he sustained," Amend. Compl. at ¶ 22, he does not claim that defendant failed to provide him with medical care.

> plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Eighth Amendment claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff's § 1983 claim arises from defendant's alleged failure to protect him from other inmates in violation of the Eighth Amendment as applied to the states under the Fourteenth Amendment.[2] The Supreme Court has held that "the unnecessary and wanton infliction

---

[2] In his supporting brief, defendant seeks dismissal of plaintiff's Fourteenth Amendment claim, characterizing it as a substantive due process claim which is subsumed by the Eighth Amendment claim. *See* Defendant's Brief at pp. 4-5. The Court does not construe plaintiff's complaint as alleging a separate Fourteenth Amendment claim. Rather, plaintiff seeks relief under the Eighth Amendment "as made applicable to the States by the Fourteenth Amendment." Amend. Compl. at ¶ 26. *See Wilson v. Seiter*, 501

4

of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). An Eighth Amendment violation may occur when prison guards fail to protect one inmate from an attack by another inmate. *See Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). To establish an Eighth Amendment claim that a prison official failed to protect an inmate, the inmate must show that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). "To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294, *quoting Farmer*, 511 U.S. at 829, 847.

    In support of his motion, defendant submitted an affidavit which sets forth the following chain of events. Plaintiff entered the ARUS Office, set down his property at the door, and stated that "I can't lock in here," that "my life is in danger" and that he "had gotten in trouble with a gang or gangs." Wayne Aff. at ¶ 3 (docket no. 23-2). Defendant asked plaintiff if he wanted to lock up for protection, but plaintiff stated "no." *Id.* When defendant asked plaintiff if another unit would work, plaintiff stated "yes." *Id.* During the course of the conversation, defendant did not recall that plaintiff gave him the names of several gang members. *Id.* Defendant, however, did

---

U.S. 294, 296-97 (1991) ("[t]he Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes") (internal citation omitted).

recall telling plaintiff to go to his cell and that defendant would see what he could do to resolve the situation. *Id.* Plaintiff then walked to his cell with his property. *Id.*

While in his office, defendant heard "a couple of prisoners yelling in the unit." *Id.* at ¶ 4. Defendant believed that plaintiff started yelling his name from behind the door where he was locking. *Id.* Defendant went up on the gallery and prisoners were yelling and telling plaintiff to shut up. *Id.* When defendant reached plaintiff's cell, plaintiff began yelling and screaming at him, saying "something on the order of get me out of this block now and other colorful statements." *Id.* Defendant informed plaintiff that he could stop screaming and give him some time to try and resolve the situation. *Id.* Defendant recalls being frustrated by plaintiff yelling at him, but does not recall telling plaintiff anything like, "I'm going to bury you in 3 block." *Id.* Defendant states that he was already planning to move plaintiff because "he [plaintiff] was going to be a problem in the unit." *Id.*

Defendant returned to his office and spoke with the ADW (Assistant Deputy Warden) for permission to move plaintiff to Unit 4. *Id.* at ¶ 5. Defendant told the ADW that plaintiff would not lock up for protection, but that Unit 4 would be fine. *Id.* Defendant also expressed his belief to the ADW that if plaintiff stayed in Unit 3 "he may be assaulted." *Id.* At some point in time a cell became available in Unit 4 and plaintiff vacated his cell in Unit 3. *Id.* Defendant recalls that plaintiff smiled and thanked him on his way out of Unit 3. *Id.*

Defendant further stated: that he had no idea of what plaintiff did or did not do while in Unit 4; that he had no authority "to ride this prisoner out of ICF"; that he sought permission from the ADW to move plaintiff out of Unit 3; that plaintiff said "no" to protection, preferring to go to a different unit; and that plaintiff was not assaulted in Unit 3. *Id.* at ¶¶ 6-7.

6

Plaintiff filed a counter-affidavit setting forth the following facts. On or about December 16, 2009, upon plaintiff's release from temporary segregation, he went straight to the ARUS office to ask defendant to place him in protective custody until he could be transferred out of ICF. Cruse Aff. at ¶ 2 (docket no. 26). Plaintiff told defendant that his life was in danger at ICF "because of something that happened in the past and that I was being threatened by prisoners of the same gang affiliation from the past event." *Id.* at ¶ 3. Contrary to defendant's recollection, plaintiff stated that he "never refused to be placed in protective custody" and that defendant never asked plaintiff whether he would feel protected in another housing unit at the same facility. *Id.* at ¶¶ 4 and 6. Plaintiff admits that defendant did move him to Unit 4; however, according to plaintiff the result of this transfer was "to be put around some of the other General Population gang member prisoners that I had asked him to have protection from, the same gang as the Unit 3 General Population gang member prisoners." *Id.* at ¶ 5. Just prior to moving plaintiff to Unit 4, defendant came to Unit 3 to confront the other prisoners who were yelling and making verbal threats to plaintiff. *Id.* at ¶ 7. At that time, plaintiff heard defendant tell the other prisoners "I'm going to bury you in 3 Block." *Id.* at ¶ 8.

Plaintiff stated that the security camera surveillance video tape for Unit 3 will show that defendant did not come to his cell first to tell plaintiff to stop yelling, but that defendant went to the cells of the other prisoners. *Id.* at ¶ 9. After confronting the other prisoners, defendant left the area for about five to ten minutes, then returned to tell plaintiff to pack his stuff and that he was being moved to Unit 4. *Id.* at ¶ 10. At that time, defendant told plaintiff "that he had talked with the ADW at the Ionia Correctional Facility and further stated to me that he told the ADW that if I

stayed in Housing Unit #3, I would be assaulted." *Id.* at ¶ 11.[3]

While plaintiff and defendant agree on a number of facts related to his transfer, they disagree on whether plaintiff asked to be placed in protective custody, whether plaintiff provided defendant with the names of gang members, and whether plaintiff agreed to be sent to Unit 4. To establish deliberate indifference, plaintiff must show that defendant was subjectively aware of a substantial risk of serious harm to plaintiff and disregarded the risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 847; *Greene*, 361 F.3d at 294. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. "However, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if

---

[3] The Court notes that plaintiff's amended complaint includes a "verification," presumably to create a verified complaint for future use in the litigation. *See* Amend. Compl. at p. 5; *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)(a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment). Plaintiff's verification, however, is insufficient to create a verified complaint. Title 28 U.S.C. § 1746 authorizes litigants to provide unsworn declarations in lieu of affidavits under oath, providing in pertinent part that such unsworn declaration or verification be subscribed in writing as true under penalty of perjury, dated, and in substantially the following form:

> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

*See* 28 U.S.C. § 1746(2). Here, plaintiff's verification did not certify that his statements were "true and correct" under "penalty of perjury" as required by the statute. Rather, he diluted the statutory language by stating "I, the undersigned, hereby declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge, information, and belief." Because plaintiff did not differentiate between allegations based upon his personal knowledge and allegations based upon his information and belief, the complaint is not verified under § 1746. *See Tenneco Automotive Operating Company, Inc. v. Kingdom Auto Parts*, 410 Fed. Appx. 841, 848 (6th Cir. 2010) (trial court could refuse to consider witness' declarations that did not specify which statements were made under information and belief and which were made from personal knowledge).

the risk was obvious and a reasonable prison official would have noticed it." *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011), citing *Farmer*, 511 U.S. at 841-42.

As an initial matter, plaintiff does not allege the type of conduct which would give rise to a constitutional violation. Here, plaintiff alleged only one incident in which he was attacked by other inmates. As a general rule, an isolated or occasional attack is insufficient to state an Eighth Amendment claim. *See Stewart v. Love*, 696 F.2d 43, 44 (6th Cir. 1982). "In the context of prison cases involving assault by other inmates, mere negligence on the part of prison officials is not sufficient to give rise to culpability under the eighth amendment." *Id.*

In addition, while plaintiff's Eighth Amendment claim is based upon his assertion that defendant placed plaintiff in danger by transferring him to Unit 4 (where hostile gang members resided), the record does not show that plaintiff was attacked in that unit or even that he was actually attacked by gang members. Rather, plaintiff alleged that on December 19, 2009, he was attacked by unidentified inmates while he was outside of Unit 4, returning from a medication pickup in a general prison population commons area. *See* Amend. Compl. at ¶¶ 16-17. In short, nothing in the pleadings or the affidavits connects the December 19th attack with defendant's decision to transfer plaintiff to Unit 4.

The parties' affidavits do establish: that defendant was subjectively aware of a risk which plaintiff faced in Unit 3; that defendant recognized that there would be a problem if he did not move plaintiff out of Unit 3; and that defendant transferred plaintiff out of Unit 3 as soon as space was available in Unit 4. According to plaintiff, defendant moved him within five to ten minutes after placing him in Unit 3. The uncontested record establishes that defendant took reasonable measures to abate the risk which plaintiff faced in Unit 3.

9

Assuming, for purposes of this motion, that plaintiff's version of events is true, i.e., that defendant denied plaintiff's request to be placed in protective custody, that plaintiff gave defendant the names of some gang members, and that plaintiff did not explicitly agree to be sent to Unit 4, such facts do not present significant probative evidence to defeat defendant's motion for summary judgment. Neither plaintiff's amended complaint nor his affidavit refer to any particular gang members who resided in Unit 4. In addition, plaintiff does not identify the December 19th assailants as gang members who resided in Unit 4 nor does he even claim that the assault occurred in Unit 4. Based on the court record, there is no basis to draw an inference that defendant was subjectively aware that plaintiff would suffer any risk of harm by being moved to Unit 4. Accordingly, defendant's motion for summary judgment should be granted.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant's motion for summary judgment (docket no. 22) be **GRANTED** and this action **TERMINATED**.

Dated: January 3, 2014	/s/ Hugh W. Brenneman, Jr.
	HUGH W. BRENNEMAN, JR.
	United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).